UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CHRIS BANG, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ACURA PHARMACEUTICALS, INC., ANDREW D. REDDICK, PETER A. CLEMENS, RON J. SPIVEY AND ROBERT JONES,<br><br>Defendants. | Case No. 1:10-cv-05757<br><br><u>CLASS ACTION</u><br><br>Hon. Virginia M. Kendall |

MEMORANDUM IN SUPPORT OF PLAINTIFF CHRIS BANG'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD AND LIAISON COUNSEL

**I.     PRELIMINARY STATEMENT**

On September 10, 2010, Plaintiff Chris Bang filed the above-captioned securities class action in this District on behalf of purchasers of the common stock of Acura Pharmaceuticals, Inc. ("Acura" or the "Company") between February 21, 2006 and April 22, 2010, inclusive (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). As required by §21D(a)(3)(A)(i) of the Exchange Act, on September 10, 2010, Plaintiff Chris Bang also published an early notice of the

pendency of this action in a widely circulated national business-oriented publication notifying other putative class members that they had sixty (60) days in which to seek appointment as Lead Plaintiff in this action by moving for their own appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Accordingly, Plaintiff Bang hereby moves this Court for an Order appointing him as Lead Plaintiff in this action pursuant to §21D(a)(3)(B) of the Exchange Act and approving his selection of Scott+Scott LLP ("Scott+Scott") as plaintiff's Lead Counsel and Freed & Weiss LLC ("Freed & Weiss") as liaison counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v).

Under the Exchange Act, Lead Plaintiff appointment is relatively straightforward. Section 21D(a)(3)(B) provides that "[n]ot later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member, … and shall appoint as lead plaintiff the member … of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." The "most adequate plaintiff" is the movant "that – (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *In re Bally Total Fitness Sec. Litig.*, No. 04 Civ. 3530, 2005 WL 627960, at *2 (N.D. Ill. Mar. 15, 2005).

This motion is made on the grounds that Plaintiff Chris Bang is the most adequate plaintiff as defined by the Exchange Act. In addition to being the first and *only* class member to file a representative action seeking recovery on behalf of the Class of defrauded Acura investors, Plaintiff Chris Bang believes he has the largest financial interest in the relief sought by class members seeking appointment as a lead plaintiff and Plaintiff Chris Bang has demonstrated his willingness to serve as a representative party and satisfied the Rule 23 showing required by the Exchange Act's lead plaintiff provision. Accordingly, Plaintiff Chris Bang respectfully requests

that the Court appoint him as Lead Plaintiff and approve his selection of Scott+Scott as Lead Counsel and Freed & Weiss as Liaison Counsel for plaintiffs and the Class. 15 U.S.C. §78u-4(a)(3)(B).

## II.     FACTUAL BACKGROUND[1]

Acura and its wholly-owned subsidiary Acura Pharmaceutical Technologies, Inc. engage in the research, development, and manufacture of pharmaceutical product candidates that utilize Acura's proprietary Aversion Technology and other technologies that purportedly provide abuse-deterrent features to orally-administered pharmaceutical drug products containing abusable active ingredients, such as tranquilizers, stimulants, sedatives, decongestants, and various other opioid analgesics. ¶2. The Company was founded in 1935 and is based in Palatine, Illinois. ¶15.

The Complaint alleges that, during the Class Period, Acura and certain of its officers and directors concealed material adverse facts about the Company's lead product candidate, Acurox, an orally administered immediate release tablet containing oxycodone as its active ingredient and Niacin as an abuse-deterrent. ¶¶4-9; 58-115. After repeated glowing announcements by Acura to its investors touting the strength of the clinical trials for Acurox and the drug's potential for obtaining FDA approval, the market was stunned when, on April 20, 2010, the FDA posted on its website, briefing materials for the April 22, 2010 meeting to consider the New Drug Application of Acurox advising that: Acura's Aversion Technology was nowhere near effective enough to warrant approval, that the Company's clinical data was defective, that its clinical studies were not properly designed, that the Company had wholly ignored specific directives from the FDA over the past four years as to specific clinical trials and evidence Acura had to demonstrate, and that that no evidence had ever been presented to the FDA that niacin discouraged abusers from abusing oxycodone. ¶¶10-11; 118-119.

---

[1]     These factual allegations are drawn from the Complaint for Violations of the Federal Securities Laws filed with the Court on September 10, 2010 (the "Complaint"). ECF No. 1. All "¶_" and "¶¶_" references are to the Complaint.

On this news, Acura's stock price plummeted 42.5% in one day, to close at $6.25 in afterhours trading. ¶120. On April 22, 2010, the FDA Joint Panel voted 19-1 against approving Acurox. ¶121. On the same day, it was reported that the FDA had been prodding Acura to demonstrate the deterrent efficacy of niacin since at least May 2009. ¶¶122-123. As a result of these disclosures, Acura's stock price again declined 39%, falling to $3.20 per share, in the pre-market trading on April 23, 2010. ¶124.

The Complaint alleges the several statements made by Acura to investors were materially false or misleading because, when they were made, the Company knew that: (i) the Company's clinical data was incomplete and defective, especially as to demonstrating Acurox's nicacin level was acceptable to non-abusing patients in need of effective pain relief therapy; (ii) Acura's clinical studies were defectively designed; (iii) the Company had wholly ignored specific directives from the FDA to demonstrate that niacin discouraged abusers from abusing oxycodone; (iv) no evidence had ever been presented to the FDA that niacin discouraged abusers from abusing oxycodone; (iv) Acura's own clinical data had demonstrated that any negative effects of niacin overdosing could be easily eliminated simply by eating food or taking Aspirin; (v) Acura's flawed clinical trials demonstrated that it was non-abusers who were most likely to suffer the adverse effects from the niacin, actually decreasing the oxycodone's intended therapeutic pain relief effects; and (vi) as a result, defendants lacked a reasonable basis for their positive statements about Acurox and its prospects. ¶116.

### III.  ARGUMENT

#### A.  Plaintiff Chris Bang Should Be Appointed Lead Plaintiff

##### 1.  The Exchange Act's Lead Plaintiff Appointment Provisions

The Exchange Act's lead plaintiff provisions establish a straightforward procedure for appointing lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). First, the pendency of the class action must be publicized in a widely

4

circulated national business-oriented publication or wire service no later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any other person or group of persons who are members of the putative class may apply to the court to be appointed as lead plaintiff in the first-filed action, whether or not they have filed a complaint. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

The Exchange Act's lead plaintiff provisions provide that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons "that - (aa) has either filed the complaint or made a motion in response to a notice…; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Because Plaintiff Chris Bang meets each of these requirements, the Court should appoint Plaintiff Chris Bang as lead plaintiff. *See gen., Mayo v. Apropos Technology, Inc.*, No. 01 Civ. 8406, 2002 WL 193393 (N.D. Ill. Feb. 7, 2002).

### 2. Plaintiff Chris Bang Fulfilled the Exchange Act's Requirements

Plaintiff Chris Bang filed, along with the Complaint, a Certification evidencing his financial interest in the relief sought and his willingness to serve as the representative party on behalf of the Class. *See* ECF No. 1-1; *see also* Declaration of Mary K. Blasy ("Blasy Decl.") filed herewith, Ex. A. Immediately after filing the Complaint, on September 10, 2010, early notice of the pendency of this action was published on *GlobeNewswire*, a national, business-oriented newswire service. *See* Blasy Decl., Ex. B; *see also Lax v. First Merchants Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (finding the statute's requirements satisfied by publication in "widely circulated" business news source "apparently read by sophisticated investors"); *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, No. 1:09-cv-1185, 2009 WL 3188695, at *2 (N.D. Ga. Sept. 29, 2009) (finding publication in the *GlobeNewswire* satisfies the Exchange Act's publication requirement).

### 3. Plaintiff Chris Bang Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Plaintiff Chris Bang purchased a net of 4,268 shares of Acura common stock and lost approximately $85,000 as a result thereof.[2]  *See* Blasy Decl., Ex. C. Movant is not aware of any other lead plaintiff applicant with a larger financial interest in the litigation. Because Plaintiff Chris Bang has a substantial financial interest and, as discussed below, otherwise satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, he should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### 4. Plaintiff Chris Bang Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B) provides that in addition to possessing the requisite financial interest in the outcome of the litigation, the proposed lead plaintiff must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B). Of the four Rule 23 prerequisites to class certification, only the two that directly address the personal characteristics of the class representative – typicality and adequacy – are relevant at the lead plaintiff appointment stage. *Takara*, 229 F.R.D. at 580. The typicality requirement primarily directs the district court to focus on whether the named representatives' claims have the "'same essential characteristics as the claims of the class at large.'"[3] *In re Nanophase Technologies Corp. Litig.*, No. 98 Civ. 7447, 1999 WL 965468, at *3 (N.D. Ill. Sept. 30, 1999). As to adequacy, "class representatives must show that: (1) their claims are not antagonistic to or in conflict with those of the proposed class; (2) they have sufficient interest in the outcome of the case; and (3) experienced, competent counsel represents them." *Makor Issues*

---

[2] The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation. The approximate losses, however, can be determined from the certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's shares.

[3] Unless otherwise noted, all citations are omitted and emphasis is added.

6

*& Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 599 (N.D. Ill. 2009) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Plaintiff Chris Bang satisfies the typicality and adequacy requirements of Rule 23 and is qualified to be appointed as lead plaintiff. Here, questions of law and fact common to the members of the putative Class predominate over questions that may affect individual class members. Common questions include: (i) whether the Exchange Act was violated by defendants; and (ii) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages. There is a well-defined community of interest in the questions of law and fact involved in this case. The claims asserted by Plaintiff Chris Bang here are typical of the claims of the other members of the putative Class because (1) Plaintiff Chris Bang purchased Acura shares during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. The claims asserted by Plaintiff Chris Bang are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" and thus typicality is satisfied. *See Mayo*, 2002 WL 193393, at *4. Newberg, *et al.*, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2008).

As evidenced by the injuries suffered by Plaintiff Chris Bang and the Class, the interests of Plaintiff Chris Bang are clearly aligned with members of the Class, and there is no evidence of any antagonism between Plaintiff Chris Bang's interests and those of the other members of the Class. Further, Plaintiff Chris Bang has demonstrated his adequacy of representation in this matter by retaining competent and experienced counsel to prosecute these claims. As shown below, Plaintiff Chris Bang's proposed Lead and Liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Plaintiff Chris Bang *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

B.  **The Court Should Approve Plaintiff Chris Bang's Choice of Counsel**

Pursuant to §21D(a)(3)(B)(v) of the Exchange Act, the presumptive lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class they are seeking to represent. *See* 15 U.S.C. §77u-4(a)(3)(B)(v); *see also Takara,* 229 F.R.D. at 581. In that regard, Plaintiff Chris Bang has selected the law firm of Scott+Scott as lead counsel, a firm which has significant experience in the prosecution of shareholder and securities class actions. *See* Blasy Decl., Ex. D. Scott+Scott has served as lead or co-lead counsel in many high-profile actions, directly recovering hundreds of millions of dollars for aggrieved investors and others harmed by corporate chicanery and greed.[4] For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of…approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . .For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case. The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court. They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

---

[4] Some other recoveries of note for Scott+Scott include, among others: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.) Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices); among others.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010); Blasy Decl., Ex. E; *see also* Ex. F (*Business Week* article discussing the *NYU* action).

As demonstrated in the Firm's résumé, Scott+Scott possesses vast resources, both in terms of financial acumen and expertise, and has committed these resources to use for the benefit of aggrieved investors like the putative Class here. As Judge Hart found in selecting Scott+Scott as co-interim class counsel over other firms proposed, the Firm's attorneys are "experienced litigators with the skills and resources necessary to handle the present type of litigation" and appear to have "more experience and possibly greater resources" than others proposed. *Hill v. The Tribune Co.*, No. 05 C 2602, 2005 WL 3299144, at *4-*5 (N.D. Ill. Oct. 13, 2005). Likewise, Freed & Weiss is a well-regarded Chicago firm with substantial experience representing individuals, medical professionals, small and large businesses and county and municipal governments as plaintiffs in complex and/or class action lawsuits. *See* Blasy Decl., Ex. G. Accordingly, the Court should approve Plaintiff Chris Bang's selection of counsel.

### IV. CONCLUSION

For all the foregoing reasons, Plaintiff Chris Bang respectfully requests that the Court: (i) appoint Plaintiff Chris Bang as Lead Plaintiff in the Action under §21D(a)(3)(B) of the Exchange Act; and (ii) approve Plaintiff Chris Bang's selection of Scott+Scott as lead counsel and Freed & Weiss as liaison counsel for the Class pursuant to §21D(a)(3)(B)(v).

Dated: November 9, 2010

Respectfully submitted,
SCOTT+SCOTT LLP

 /s/Mary K. Blasy
MARY K. BLASY

ARTHUR L. SHINGLER III (*pro hac vice*)
MARY K. BLASY (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619-233-4565
Fax: 619-233-0508

DAVID R. SCOTT (*pro hac vice*)
SCOTT+SCOTT LLP
156 South Main Street
Colchester, CT 06415
Tel: 860-537-3818
Fax: 860-537-4432

*Proposed Lead Counsel and Attorneys for Plaintiff Chris Bang*

-and-

FREED & WEISS LLC
PAUL WEISS
JEFFREY LEON
111 West Washington Street, Suite 1331
Chicago, IL 60602-3455
Tel: 312-220-0000
Fax: 312-220-7777

*Proposed Liaison Counsel and Attorneys for Plaintiff Chris Bang*

CERTIFICATE OF SERVICE

      I hereby certify that on November 9, 2010 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 9, 2010.

      /s/    Mary K. Blasy
MARY K. BLASY
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Fax: 619-233-0508
E-mail: mblasy@scott-scott.com