UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRIS BANG, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ACURA PHARMACEUTICALS, INC., ANDREW D. REDDICK, PETER A. CLEMENS, RON J. SPIVEY AND ROBERT JONES,<br><br>Defendants. | CIVIL ACTION NO. 1:10-cv-05757-VK |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE ACURA SHAREHOLDER INVESTOR GROUP TO CONSOLIDATE FUTURE RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF, AND TO APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**STATEMENT OF ISSUES TO BE DECIDED**

Whether future related actions should be consolidated for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

Whether the Acura Shareholder Investors Group should be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA.

Whether the Court should approve the Acura Shareholder Investors Group's selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel to represent the Class in this action, also pursuant to Section 21D(a)(3)(B) of the Exchange Act of, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA, and Susman Heffner & Hurst LLP

1

("SHH") as Local Counsel for the Class.

## PRELIMINARY STATEMENT

The Acura Shareholder Investors Group hereby moves: for consolidation of the related actions; to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the PSLRA; for approval of its selection of the law firm of KSF as Lead Counsel for the Class; and for approval of its selection of the law firm of SHH as Local Counsel for the Class. The members of the Acura Shareholder Investors Group fully understand their duties and responsibilities to the Class, and are willing and able to oversee the vigorous prosecution of this action. As described in the Certifications attached to the Declaration of Matthew T. Heffner in Support of the Motion of the Acura Shareholder Investor Group to Consolidate Future Related Actions, to Be Appointed Lead Plaintiff, and to Approve Movant's Choice of Counsel ("Heffner Decl.") at Exhibit A, the Acura Shareholder Investors Group has suffered substantial losses as a result of its members' purchases of shares of Acura securities between the dates of February 21, 2006, and April 22, 2010, inclusive (the "Class Period").[1] To the best of its members' knowledge, the Acura Shareholder Investors Group has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff. In addition to evidencing the largest financial interest in the outcome of this litigation, the Acura Shareholder Investors Group's Certifications demonstrate its members' intent to serve as Lead Plaintiff in this litigation, including their cognizance of the duties of serving in that role.[2] Moreover, the Acura Shareholder Investors Group satisfies the applicable requirements of both the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

---

[1] This was the Class Period pled in *Bang v. Acura Pharmaceuticals, Inc., et al.*, No. 1:10-cv-05757-VK (filed September 10, 2010), the first and to date only case filed in this matter.

[2] A copy of the Acura Shareholder Investors Group members' Certifications of their transactions in Acura securities is attached as Exhibit A to the Heffner Declaration that has been filed in support of this motion.

Accordingly, the Acura Shareholder Investors Group respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all currently and future filed related actions with the instant case; (2) appointing the Acura Shareholder Investors Group as Lead Plaintiff in this action pursuant to the Exchange Act; (3) approving the Acura Shareholder Investors Group's selection of the law firm of KSF as Lead Counsel for the Class and SHH as Local Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

## PROCEDURAL BACKGROUND

The first lawsuit against Defendants, *Bang v. Acura Pharmaceuticals, Inc., et al.*, No. 1:10-cv-05757-VK, was filed on behalf of plaintiff Chris Bang by Scott & Scott LLP, in the United States District Court for the Northern District of Illinois, on September 10, 2010, alleging violations of the Exchange Act. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on September 10, 2010, the first notice that a class action had been initiated against Defendants was published on *Globe Newswire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than November 9, 2010. *See* Heffner Decl. at Exhibit B. The members of the Acura Shareholder Investors Group are Class Members (*See* Heffner Decl. at Exhibit A) who have come together to timely file this motion within the 60 day period following publication of the September 10, 2010, notice.

## STATEMENT OF FACTS[3]

Acura and its wholly-owned subsidiary Acura Pharmaceutical Technologies, Inc. engage in the research, development, and manufacture of pharmaceutical product candidates that utilize Acura's Aversion Technology, Impede Technology, and other technologies that purportedly

---

[3] These facts were derived from the allegations contained in the class action styled *Bang v. Acura Pharmaceuticals, Inc., et al.*, No. 1:10-cv-05757-VK (filed September 10, 2010).

3

provide orally administered pharmaceutical drug products containing commonly-abused ingredients with deterrent features designed to reduce the likelihood of such abuse. Acura's lead product candidate during the Class Period, "Acurox," was an orally administered, immediate-release tablet containing oxycodone. As alleged in the complaint, the product was purportedly designed to relieve pain while discouraging common methods of abuse, including intentional overdosing, intravenous injection of dissolved tablets or capsules, and nasal snorting of crushed tablets or capsules; But, Defendants were aware that the deterrent effects of Acurox were easily overcome by abusers and only had a substantial adverse effect on non-abusers.

Further, as described in the Complaint, the potential market for Acurox was in any event quite limited. In response, Defendants sought to convince the investment community that the FDA would permit the Company to describe Acurox as providing a deterrent effect in its labeling, thus making the product commercially viable. As further alleged, the FDA had specifically advised Defendants that an aspirin trial should be run on Acurox, but defendants – knowing that aspirin would completely mitigate the deterrent effect of niacin in Acurox, and so prevent the drug from receiving the desired deterrent labeling – refused to run such a trial. Rather than disclosing these circumstances, Defendants published a series of materially false and misleading statements that Defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication, and that omitted to reveal material information necessary to make Defendants' statements, in light of such material omissions, not materially false and misleading.

Throughout the Class Period, Defendants represented to investors that the FDA was not requiring additional clinical trials, that based on what defendants knew then the FDA would permit them to describe Acurox's deterrent effects in its product label, and that Acurox was a feasible FDA 502(b)(2) bioequivalent drug candidate. Defendants' representations concerning Acurox were materially false and misleading and/or omitted to state facts necessary under the circumstances to make the statements made not materially false and misleading. In fact, according to the Complaint, Defendants knew all along that Acurox's niacin additive rendered the drug non-approvable because only non-abusers would experience the adverse niacin effects

4

while abusers could easily avoid them.

Investors would only learn the truth about Acura at the end of the Class Period, between April 20, 2010, and April 22, 2010, when the FDA's pre-ordained decision to reject the Company's Acurox new-drug application, including its well-founded reasons for doing so, was finally disclosed to the market. Prior to the April 20, 2010, announcement, Acura shares closed at $7.90 per share. In response to these revelations, Acura's share price dropped almost 50% over three trading days[4], to close at $4.02 per share on April 23, 2010. This sharp decline in share price caused material harm to investors, inflicting substantial losses and damages on the holders of Acura's securities.

Defendants were motivated to and did conceal the true prospects of Acura and its Acurox product, and materially misrepresented and failed to disclose the inevitability of FDA rejection that was present throughout the Class Period, because the scheme: (a) enabled Defendants to artificially inflate the price of Company shares by deceiving the investing public regarding the commercial viability of Acura's leading product candidate and the intrinsic value of Acura's common stock, thus preserving their lucrative executive positions and salaries and earning its executives hundreds of thousands of dollars in bonuses; (b) enabled Defendants to obtain for Acura a listing on the Nasdaq Stock Exchange and a place on the Russell 3000 Index; and (c) enabled the Company's venture capital financiers – who were substantial majority and controlling shareholders – to artificially inflate the reported value of these investors' holdings during the Class Period, strengthening their own balance sheets.

## ARGUMENT

**I.     THE COURT SHOULD CONSOLIDATE FUTURE RELATED ACTIONS**

Consolidation pursuant to Rule 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact. *See Disher v. Citigroup Global Markets, Inc.*, 487 F. Supp.2d 1009, 1014 (S.D. Ill. 2007); *Midwest Community Council, inc. v. Chicago*

---

[4] Acura stock was not traded at all on April 22, 2010.

*Park Dist.*, 98 F.R.D. 491, 499 (N.D. Ill. 1983). Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs of delay.

It is clearly within the Court's discretion to consolidate actions involving common questions of law and fact. *Encylcopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp.2d 1169, 1176 (W.D. Wis. 2007); *see also Am. Photocopy Equip. Co. v. Fair (Inc.)*, 35 F.R.D. 236, 237 (N.D. Ill. 1963). Securities class actions are "particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money by everyone involved." *In re Century Aluminum Co. Sec. Litig.*, 2009 WL 2905962 (N.D. Cal., Sept. 8, 2009), *citing In re Equity Funding of Amer. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976); *Mayo v. Apropos Tech., Inc.*, No. 01-8406, 2002 WL 193393, at *2 (N.D. Ill. Feb 7, 2002) (consolidating securities class actions where: "each of the above Related Cases involve class action claims on behalf of the purchasers of [Company's] common stock and assert essentially similar and overlapping class claims of relief brought on behalf of purchasers of [Company's] common stock"). Accordingly, this Court should enter an Order that consolidates *Bang v. Acura Pharmaceuticals, Inc., et al.*, No. 1:10-cv-05757-VK with any future-filed related cases.

## II. THE ACURA SHAREHOLDER INVESTORS GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §

78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Globe Newswire* on September 10, 2010 (*See* Heffner Decl. Exhibit B).[5] This notice announced that applications for appointment as Lead Plaintiff were to be made no later than November 9, 2010. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice…
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Only by a showing of proof that a Lead Plaintiff movant will not fairly and adequately

---

[5] *Globe Newswire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 531 (N.D. Cal. 2009).

7

represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class, will this presumption be overcome. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

### B. The Acura Shareholder Investors Group is "The Most Adequate Plaintiff"

#### 1. The Acura Shareholder Investors Group Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff

The Acura Shareholder Investors Group moves this Court to be appointed Lead Plaintiff and has met the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) by timely filing its motion on November 9, 2010. Moreover, the Acura Shareholder Investors Group has sustained a substantial loss from its members' investment in Acura stock and has shown its willingness to represent the Class by its members signing Certifications detailing their Acura transaction information during the Class Period. *See* Heffner Decl. Exhibit A. As demonstrated by its members' Certifications, the Acura Shareholder Investors Group is prepared to consult with counsel on a regular basis, prior to every major litigation event, and to direct the course of litigation, with the benefit of counsel's advice. In addition, the Acura Shareholder Investors Group has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel for the Class, KSF, is attached as Exhibit C to the Heffner Declaration. The firm biography of proposed Local Counsel for the Class, SHH, is attached as Exhibit D to the Heffner Declaration.

#### 2. The Acura Shareholder Investors Group Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See In re Motorola Sec. Litig.*, No. 03-287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003). A

8

movant who "has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 … is presumptively entitled to lead plaintiff status." *Maiden v. Merge Technologies, Inc.*, No. 06-349, No. 06-356, No. 06-375, No. 06-431, No. 06-483, No. 06-493, & No. 06-519, 2006 WL 3404777, at *4 (E.D. Wis. 2006) *citing In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"). As demonstrated herein, movant has the largest known financial interest in the relief sought by the Class. *See* Heffner Decl. Exhibit A.

### 3. The Acura Shareholder Investors Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy— directly address the personal characteristics of the class representative. *Siegall v. Tibco Software, Inc.*, 2006 U.S. Dist. LEXIS 26780, *15 (N.D. Cal. February 24, 2006) ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and adequacy of representation are key factors."). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.

9

*See Lax v. First Merchants Acceptance Corp.*, No. 97-2715, No. 97-2716, No. 97-2737, No. 97-2791, No. 97-3767, No. 97-4237, No. 97-4013, & No. 97-4236, 1997 WL 461036 at *6 (N.D. Ill. August 6, 1997) ("A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on … typicality and adequacy.") As detailed below, the Acura Shareholder Investors Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The Acura Shareholder Investors Group has claims that are typical of those of other class members and can adequately serve as Lead Plaintiff.

### i. The Acura Shareholder Investors Group's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232-33 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64 (1985).

In this case, the typicality requirement is met because the Acura Shareholder Investors Group's claims are identical to and non-competing and non-conflicting with the claims of the other Class Members. The members of the Acura Shareholder Investors Group and all of the Class Members purchased Acura securities during the Class Period when the stock prices were artificially inflated as a result of Defendants' fraudulent misrepresentations and omissions, and thus, both the members of the Acura Shareholder Investors Group and the Class Members suffered damages as a result of these purchases. Simply put, the members of the Acura Shareholder Investors Group, like all other Class Members: (1) purchased Acura securities

during the Class Period; (2) purchased Acura securities at artificially inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. The Acura Shareholder Investors Group therefore satisfies the typicality requirement. *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002). The Acura Shareholder Investors Group's claims and injuries arise from the same conduct from which the other class members' claims and injuries arise. *See Rosario,* 963 F.2d at 1018. The Acura Shareholder Investors Group is not subject to any unique or special defenses. Thus, the Acura Shareholder Investors Group meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its claims are the same as the claims of the other Class Members.

### ii. The Acura Shareholder Investors Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B). *See also Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228-229 (the standard for adequacy of representation under Rule 23(a)(4) is met where: "(1) [movants'] claims are not antagonistic or in conflict with those of the class; (2) [movants have] sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) [movants are] represented by competent, experienced counsel who will be able to prosecute the litigation vigorously").

The Acura Shareholder Investors Group's interests are clearly aligned with the members of the Class because its members' claims are identical to the claims of the Class. There is no evidence of antagonism between its interests and those of the proposed Class Members. Furthermore, the Acura Shareholder Investors Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the large financial loss its members

incurred as a result of the wrongful conduct alleged herein. This motivation, combined with the Acura Shareholder Investors Group's identical interest with the members of the Class, shows that it will adequately and vigorously pursue the interests of the Class. In addition, the Acura Shareholder Investors Group has selected KSF, a law firm highly experienced in successfully prosecuting securities class actions and complex litigation, as Proposed Lead Counsel.

In sum, because of the Acura Shareholder Investors Group's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met in this case. Therefore, since the Acura Shareholder Investors Group not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), but also has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

### III. THE COURT SHOULD APPROVE THE ACURA SHAREHOLDER INVESTORS GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Acura Shareholder Investors Group has selected KSF to serve as Lead Counsel for the Class. KSF has not only successfully prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions. *See* Heffner Decl. Exhibit C. Furthermore, the Acura Shareholder Investors Group's counsel have continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## **CONCLUSION**

For all of the foregoing reasons, the Acura Shareholder Investors Group respectfully requests that this Court: (1) consolidate all currently and any future filed related cases; (2) appoint the Acura Shareholder Investors Group to serve as Lead Plaintiff in this action; (3) approve the Acura Shareholder Investors Group's selection of Lead Counsel and Local Counsel for the Class; (4) grant such other and further relief as the Court may deem just and proper.

    SUSMAN HEFFNER & HURST LLP
    By:    /s/ Matthew T. Heffner
    Matthew T. Heffner
    20 South Clark Street, Suite 600
    Chicago, Illinois 60603
    Telephone: (312) 346-3466
    Facsimile: (312) 346-2829

    *Local Counsel for Lead Plaintiff Movant the Acura Shareholder Investors Group*

    KAHN SWICK & FOTI, LLC
    Kim E. Miller
    500 5th Avenue, Suite 1810
    New York, NY 10110
    Telephone: (212) 696-3730
    Facsimile: (504) 455-1498

    -and-

    Lewis S. Kahn
    206 Covington Street
    Madisonville, LA 70447
    Telephone: (504) 455-1400
    Facsimile: (504) 455-1498

    *Proposed Lead Counsel for Lead Plaintiff Movant the Acura Shareholder Investors Group*

Dated: November 9, 2010

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

                                              /s/ Matthew T. Heffner
                                              MATTHEW T. HEFFNER