IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHRIS BANG, on behalf of himself and all others similarly situated, | ) ) ) ) | |
|  | ) | Case No. 10 C 5757 |
| Plaintiffs, | ) | |
| v. | ) ) | Judge Virginia M. Kendall |
| ACURA PHARMACEUTICALS, INC., ANDREW D. REDDICK, PETER A. CLEMENS, RON J. SPIVEY AND ROBERT JONES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Chris Bang ("Bang") and the Acura Investors Group ("Investors Group") each move to appoint counsel and lead plaintiff in a securities class action against Acura Pharmaceuticals ("Acura"). For the following reasons, the Court denies Bang's Motion to Appoint Counsel and Lead Plaintiff and grants the Investors Group's Motion to Appoint Counsel and Lead Plaintiff. The Investors Group's Motion to Consolidate is not properly before the Court at this time and as such will not be addressed.

**BACKGROUND**

On September 10, 2010, Bang filed a securities class action in this District on behalf of purchasers of common stock of Acura between February 21, 2006 and April 22, 2010 ("Class Period") alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78j(b) and 78t(a) ("PSLRA"), and SEC's Rule 10b-5. Specifically, the Complaint charges that Acura made knowingly false and misleading statements to investors regarding the effectiveness and

pending FDA approval of its drug Acurox. When the FDA announced on April 22, 2010 that Acurox was not effective enough to warrant approval and that Acura had disregarded specific instructions from the FDA regarding clinical trials, Acura's share price dropped 42.5% (and another 39% in after-market trading). The same day, the FDA voted 19-1 against approving Acurox.

Bang published notice of the pendency of the class action on September 10, 2010 in *GlobeNewswire*, a widely circulated national business publication, notifying potential class members that they had sixty days to seek appointment as lead plaintiff.

Both Bang and the Investors Group timely moved to appoint counsel and lead plaintiff. Bang claims he suffered the largest individual loss of any investor—$87,881—and that he was the first and only class member to file an action seeking recovery on behalf of a class of defrauded Acura investors.[1] The Investors Group comprises three individual investors who lost money on their Acura stock suffering a total loss of $93,503.91. Individually, the three Investors Group members suffered losses of $25,081, $31,081, and $37,341. Two of the three Investors Group members had a relationship that predated the instant lawsuit.

After the parties fully briefed the issue, the Court heard oral argument on December 20, 2010.

## STANDARD OF REVIEW

Under prior law, lead plaintiffs in securities class actions were selected by a "race to the courthouse" method where the first plaintiff to file suit was usually appointed as lead plaintiff. *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The PSLRA eliminated this method and instead sets forth a procedure for the selection of a lead plaintiff to oversee securities class actions which focuses

---

[1] Bang initially stated losses of $84,850.46 in his Motion for Appointment as Lead Plaintiff, however he modified that amount in his Memorandum in Opposition to the Investors Group's Motion for Appointment as Lead Plaintiff. The Investors Group contests this modification but this dispute is not material to the Court's decision.

on who the best representative would be for the class. 15 U.S.C. § 78u-4(a)(3). The "plaintiff or plaintiffs" that file the initial action must first publish a notice to the class within twenty days informing potential class members of their right to file a motion for appointment as lead counsel. *Id*. § 78u-4(a)(3)(A)(i). Within sixty days of that publication any member of the proposed class may apply to be appointed lead plaintiff. *Id*. § 78u-4(a)(3)(A)(i)(II). The court then appoints as lead plaintiff the person or group of persons that the court determines to be most capable of adequately representing the interests of the class members. *Id.* § 78u-4(a)(3)(B)(i).

The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) either has filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. *Id.* § 78u-4(a)(3)(B)(iii).[2] This presumption may be rebutted if there is proof that the presumptively most adequate lead plaintiff either will not fairly and adequately protect the class' interests or is subject to some unique defense that renders the lead plaintiff incapable of adequately representing the class. *Id.* § 78u-4(a)(3)(B)(iii)(II).

## DISCUSSION

**I.    Lead Plaintiff**

Here, Bang and the Investors Group each seek to be lead plaintiff. Both Bang and the Investors Group agree that Bang's publication of notice in *GlobeNewswire* satisfied the publication requirement and that each party timely moved to be appointed lead plaintiff in response to that notice. *See* 15 U.S.C. § 78u-4(a)(B)(iii)(aa). Bang and the Investors Group disagree over which

---

[2] The Rule 23 analysis is limited to the typicality and adequacy of the proposed lead plaintiff. *See Cavanaugh*, 306 F.3d at 730.

plaintiff has the largest financial interest in the relief sought by the class. *See id.* § 78u-4(a)(B)(iii)(bb).

### A. Financial Interest

To determine which plaintiff has the largest financial interest, courts look to the plaintiff with the greatest net loss during the proposed class period. *See, e.g., Takara Trust v. Molex Inc.*, 229 F.R.D. 577 (N.D. Ill. 2005) (Castillo, J.) (to determine financial interest, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses") (internal citations omitted). To do so here, the Court must first address whether the Investors Group can aggregate the losses of its individual investors.

#### i. Pre-Existing Relationship

The PSLRA contemplates a court appointing as lead plaintiff "the member or members of the purported plaintiff class" that the court determines to be the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute explicitly allows for a group of multiple moving parties to act as a lead plaintiff but its only additional guidance is that this group satisfy Rule 23; whether the specific dynamics and composition of a group are appropriate is left to the courts' interpretation. A frequently disputed element of this analysis is whether a group of plaintiffs acting as lead plaintiff must have a pre-existing relationship with one another that is separate from their investment and began before the lawsuit was filed. District courts interpreting the PSLRA "have made irreconcilable conclusions based on similar facts" regarding this issue. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289 at *8 (N.D. Cal. Aug. 22, 2008) (Patel, J.). Recently, the "trend" has been to allow small groups of investors to act as lead plaintiff even if they do not have pre-existing relationships. *See Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427 at *4-5 (W.D. Wash. Aug.

2, 2010) (Pechman, J.) (trend "seems to be away from a blanket prohibition against 'lead plaintiff groups' with no pre-existing relationship").

The Seventh Circuit has not ruled whether a group of investors claiming the greatest total loss must be composed of investors with a pre-existing relationship prior to the lawsuit. The Third Circuit, however, has explicitly allowed small groups of investors to aggregate their losses in computing the total loss amount and act as lead plaintiff whether or not they had a pre-existing relationship. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266-67 (3rd Cir. 2001) (disagreeing with other courts that read the PSLRA to preclude a group of unrelated individuals from serving as lead plaintiff). The Third Circuit reiterated that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner." *See id.* at 266. Rather, that Circuit held that courts should "concern" themselves with whether a movant group will fairly and adequately protect the interests of the class; as such, the extent of the prior relationships between members of a movant group may enter "into the calculus" of this equation but it is not dispositive. *See id.* at 266-67. For example, courts may look to the efforts of lawyers in creating a movant group to determine whether the resulting group could "be counted on to monitor counsel in a sufficient manner." *See id.* at 267 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D. N.Y. 2001)). Courts also examine the size of the movant group to determine whether that group can fairly and adequately represent the class. *See id*. at 267; *see, e.g., Sabbagh*, 2010 WL 3064427 at *5 (a group of investors should be "small and cohesive enough such that it can adequately control and oversee litigation") (citing *Eichenholtz*, 2008 WL 3925289 at *8). "[C]ourts should generally presume that groups with more than five members are too large to work effectively." *See Cendant* 264 F.3d at 267 (citing Memorandum of the Securities and Exchange Commission, Amicus Curiae, at 17 n. 13,

5

attached to *In re Cendant Corp. Litig.*, 2000 WL 34002986 (3rd. Cir. 2000)).

    ii.  **Loss Amount**

Here, Bang is an individual investor and the Investors Group comprises three individual investors, two of whom had a pre-existing relationship. Consistent with the Third Circuit's holding in *Cendant* that small groups of unrelated investors can aggregate their losses for purposes of calculating the financial interest, and finding no contrary holding by the Seventh Circuit, the Court finds that the Investors Group's combined loss amount of $93,503.91 exceeds Bang's $87,881 loss amount. Although minimally, the Investors Group is therefore the plaintiff with the largest financial interest in the Class Period.

  **B.**  **Rule 23 Typicality and Adequacy**

The initial Rule 23 analysis focuses on "whether the movant has made a *prima facie* showing of typicality and adequacy." *See Cendant*, 264 F.3d at 263. This "threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements" to establish a rebuttable presumption "should be made by the court's independent judgment" and "need not be extensive." *See id.* at 263-64.

    i.  **Typicality**

A moving party satisfies Rule 23's typicality requirement if the circumstances on which its losses are based are typical of those of the class. Fed. R. Civ. P. 23(a); *see, e.g., Eichenholtz*, 2008 WL 3925289 at *11 (typicality met where movant purchased securities during class period at prices allegedly artificially inflated by defendants' materially false and misleading statements and movant suffered damages as a result).

Here, Bang provides detailed information regarding his purchase and sale of Acura stock

6

Case: 1:10-cv-05757 Document #: 48 Filed: 01/11/11 Page 7 of 11 PageID #:549

during the Class Period and a chart detailing his net losses as a result. The Investors Group also provides detailed information regarding the purchase and sale of Acura stock during the Class Period and the resulting losses its investors suffered. Therefore both Bang and the Investors Group have satisfied the threshold inquiry into typicality. *See Cendant*, 264 F.3d at 264.

### ii. Adequacy

A moving party satisfies Rule 23's adequacy requirement if it will fairly and adequately protect the interest of the class. Fed R. Civ. P. 23(a). Courts consider whether the moving party "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *See Cendant*, 264 F.3d at 265 (internal citations omitted). The adequacy inquiry includes consideration of the moving party's interests, whether their selected class counsel is qualified, and whether the choices made by the movant "are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class." *See id.* (adequacy requirement may not be met where moving party selects plainly incapable legal counsel or negotiated a clearly unreasonable fee agreement with chosen counsel). In making the threshold adequacy determination for a group of investors as lead plaintiff, courts should also consider the size of the group and its functionality. *See id.* at 265-67.

Here, Bang has selected Scott & Scott as its lead counsel and Freed & Weiss as its liason counsel. The Investors Group has selected Kahn Swick & Foti as its lead counsel and Susman Heffner & Hurst as its liason counsel. Both lead and liason law firms are adequate and experienced

with long histories of capable securities class action litigation.[3] Moreover, the claims raised by Bang and the Investors Group are aligned with those raised by the class.

The Investors Group, as discussed in § I(A) *supra* comprises three individual investors and represents a presumptively effective group. *See Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 614 (W.D. Okla. 2009) (lead plaintiff group composed of three individual investors "is small enough that coordinated decision making will not present any difficulties"). As such, both parties have made a *prima facie* showing of adequacy. However, only the Investors Group has satisfied all three elements of the PSLRA—it has made a timely motion to be appointed lead plaintiff, it has suffered the largest financial loss; and it is an adequate and typical plaintiff capable of representing the class. Therefore, the Investors Group has met the rebuttable presumption of lead plaintiff status.

C.     Rebuttal

Once the most adequate plaintiff has been presumed, the PSLRA provides for that presumption to be "rebutted only upon proof by a member of the purported class" that the presumptively most adequate plaintiff: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job." *Cendant*, 264 F.3d at 268.

Here, the Investors Group is the presumed most adequate plaintiff and there are no challenges

---

[3] The Court granted Bang's Motion for Substitution of Counsel on January 10, 2011. Bang's liason counsel is now Freed Kanner London & Millen, an adequate and experienced law firm.

to the typicality of the three individual investors that comprise the group. Instead, Bang attempts to rebut the presumption by challenging the Investors Group's adequacy, particularly the Investors Group's ability to oversee its legal counsel. Bang alleges that the Investors Group was cobbled together by the law firm of Kahn Swick & Foti for the sole purpose of attaining the largest financial loss amount. *See, e.g., In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005) (Grady, J.) (courts should not recognize artificially aggregated groups). In addition, Bang challenges the Investors Group for failing to demonstrate how the three investors who comprise the group plan to function together and make decisions.

Bang, however, does not provide the Court with "proof" that Kahn Swick & Forti artificially aggregated the Investors Group, nor does Bang provide evidence that the three investors who comprise the Investors Group are in fact unable to control their counsel. *See, e.g., Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009) (rebutting party must demonstrate evidence that an investor group was a "lawyer-made artifice"). Rather, the Investors Group members have each provided affidavits attesting to their individual investments in Acura, their decisions to purchase Acura securities without any influence of counsel, and their willingness to serve as a representative party on behalf of a class. The Investors Group also notes the benefits of having three individuals as lead plaintiff, should one individual choose to withdraw during the class action. The Investors Group intends to make decisions based on the majority vote of its three investors and to take advantage of each individual investor's background and investment experience. *See, e.g., Sabbagh*, 2010 WL 3064427 at *6 (investor group satisfied adequacy challenge by providing sworn declarations regarding investments and investment experience, willingness to represent class and act as cohesive group, process for sharing information and decision-making, and agreeing upon an

emergency spokesman). While the Investors Group could have included additional information regarding its decision-making process and its plans to oversee counsel, the Court nonetheless finds that Bang has not presented proof of inadequacy[4] and that the Investors Group has set forth sufficient information to defend itself from Bang's rebuttal.

Moreover, Bang's own attempt at lead plaintiff presents concerns regarding his typicality and adequacy. The Investors Group presented proof of the high volume of trades of Acura securities that Bang engaged in during the Class Period. Based on this evidence, the Investors Group alleged that Bang's trading habits were similar to those of a day trader or market maker—someone who trades based on minor price fluctuations and does not necessarily rely on company statements. While Bang refuted these accusations in his own affidavit, unusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions. *See, e.g., Applestein v. Medivation, Inc.*, 2010 WL 3749406 at *3 (N.D. Cal. Sep. 20, 2010) (Patel, J.) (a record of high-frequency and large trades can "raise serious concerns" about a lead plaintiff's typicality and "about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions" of the defendant). Therefore, even though the record does not conclude that Bang was an actual day trader or market mover, his atypical trading volume may be sufficient to rebut the presumption of lead plaintiff, a presumption he has failed to attain because he did not suffer the greatest financial loss. *See, e.g., id.* (presumption rebutted where record raised "serious concerns" about movant's typicality even if record insufficient to establish movant was a day trader).

---

[4] The Court is not moved by Bang's contention that Kahn Swick & Forti issued misleading solicitations during the notice publication period.

Bang has failed to rebut the presumption that the Investors Group is the lead plaintiff.

**II.     Conclusion**

For the reasons stated, the Court denies Bang's Motion to Appoint Counsel and Lead Plaintiff and grants the Investors Group's Motion to Appoint Counsel and Lead Plaintiff.

So ordered.

											_____
											Virginia M. Kendall
											United States District Court Judge
											Northern District of Illinois

Date: January 11, 2011