**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE ACURA PHARMACEUTICALS, INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) | Case No. 1:10-CV-05757-VK Honorable Virginia M. Kendall |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

# Table of Contents

**Page**

BACKGROUND ...................................................................................................1

ARGUMENT ........................................................................................................2

I.    The Court should award Lead Counsel a one-third percentage of the common fund in attorneys' fees.............................................................................................2

    A.    A one-third fee represents what the private market would have generated ex ante had the Class negotiated the fee. ......................................................2

        1.    A one-third contingent fee is a typical award in securities class-action litigation. ....................................................................3

        2.    A one-third fee represents the market rate for securities class-action litigation. .....................................................................5

        3.    Lead Counsel bore the risk of nonpayment. ...................................6

        4.    Lead Counsel performed well in this case. .....................................7

        5.    Lead Counsel performed all the work necessary to reach this settlement. ......................................................................................8

    B.    A lodestar cross-check of the requested fee shows that it is very reasonable. ..............................................................................................9

II.    Lead Counsel's expenses are fair and reasonable..................................................10

III.    To date, not one of the 13,214 identified class members has objected to the requested fees or expenses. .................................................................................11

CONCLUSION.....................................................................................................11

## Table of Authorities

**Page**

## Cases

*Bello v. Integrated Resources, Inc.*,
    No. 88-1214, 1990 WL 200670 (S.D.N.Y. Dec. 4, 1990) .......................................4

*Boeing Co.* v. *Van Gemert*,
    444 U.S. 472 (1980)...............................................................................................2

*Burkholder v. City of Fort Wayne*,
    2010 WL 4457310 (N.D. Ind. Nov. 1, 2010).......................................................3

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d at 768 (11th Cir. 1991)..........................................................................3

*City of Detroit v. Grinnell Corp.*,
    356 F. Supp. 1380 (S.D.N.Y. 1972)......................................................................7

*Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ............................................................................2–3

*Faircloth v. Certified Fin. Inc.*,
    2001 WL 527489 (E.D. La. May 16, 2001)..........................................................3

*Gaskill v. Gordon*,
    160 F.3d 361 (7th Cir. 1998) ...............................................................................3

*Goldsmith v. Tech. Solutions Co.*,
    1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).....................................................4, 6

*Gulf Oil/Cities Serv. Tender Offer Litig.*,
    142 F.R.D. 588 (S.D.N.Y. 1992) .........................................................................7

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir.1991) ................................................................................2

*Howes v. Atkins*,
    668 F. Supp. 1021 (E.D. Ky. 1987) ......................................................................4

*In re Blech Sec. Litig.*,
    2000 U.S. Dist. LEXIS 6920 (S.D.N.Y. May 22, 2000).........................................9

*In re Cendant Corp. Derivative Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ......................................................................9

*In re Eng'g Animation Sec. Litig.*,
    203 F.R.D. 417 (S.D. Iowa 2001) ............................................................3

*In re Interpublic Secs. Litig.*,
    Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 27, 2004)...........9

*In re Global Crossing Secs. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................6

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................10

*In re Lithotripsy Antitrust Litig.*,
    2000 WL 765086 (N.D. Ill. June 12, 2000) ..............................................3

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir.1995) ....................................................................3

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ..................................................................3

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ..................................................................5

*Kitson v. Bank of Edwardsville*,
    2010 WL 331730 (S.D. Ill. Jan. 25, 2010)..............................................3

*McKinnie v. JP Morgan Chase Bank N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009).................................................3, 5

*Meyenburg v. Exxon Mobil Corp.*,
    2006 WL 2191422 (S.D. Ill. July 31, 2006) ............................................4

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989)..............................................................................9

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ..................................................................5

*Muehler v. Land O'Lakes, Inc.*,
    617 F. Supp. 1370 (D. Minn. 1985)........................................................3

*NY State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)..................................................................9

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
　　No. 77-39, 1984 WL 21981 (N.D. Ill. Sept. 14, 1984) ...........................................5

*Pinto v. Princess Cruise Lines, Ltd.*,
　　513 F. Supp. 2d 1334 (S.D. Fla. 2007) ..................................................................5

*Ratner v. Bennett*,
　　No. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996) ........................................3

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
　　2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ........................................................3

*Schulte v. Fifth Third Bank*,
　　09-CV-6655, 2011 WL 3269340 (N.D. Ill. July 29, 2011) ................................3, 4

*Sutton v. Bernard*,
　　504 F.3d 688 (7th Cir. 2007) .................................................................................3

*Taubenfeld v. AON Corp.*,
　　415 F.3d 597 (7th Cir. 2005) .................................................................................3

*Vizcaino v. Microsoft Corp.*,
　　290 F.3d 1043 (9th Cir. 2002) ...............................................................................8

*Waters v. Int'l Precious Metals Corp*.,
　　190 F.3d 1291 (11th Cir. 1999) .............................................................................3

*Zinman v. Avemco Corp.*,
　　No. 75-1254, 1978 WL 5686 (E.D. Pa. Jan. 18, 1978)...........................................4

## Other Authorities

E. Buckberg, T. Foster, R. Miller, and S. Planrich,
　　*Recent Trends in Shareholder Class Action Litigation:*
　　*Bear Market Cases Bring Big Settlements*
　　(NERA, February 2005) ......................................................................................4–5

J. Milev, R. Patton, S. Starykh, and J. Montogmery,
　　*Recent Trends in Securities Class Action Litigation:*
　　*2011 Year-End Review* (NERA, December 2011)...................................................4

Wright, Miller & Kane,
　　*Federal Practice & Procedure: Civil 2d* § 1803 (1986).........................................2

Lead Counsel, Kahn Swick & Foti, LLC ("KSF") generated a $1,500,000 settlement for the Class. That settlement represents approximately 23% of the Plaintiffs' expert's estimation of damages in this case ($6.5 million). Given the financial resources of Defendants, not to mention the early stage of this litigation, the proposed settlement is an excellent result. *See* Declaration of Kim E. Miller in Support of Approval of Proposed Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Miller Decl.").

And while the litigation is just over a year old, complex securities litigation is expensive. The time here shows that—Plaintiff's counsel dedicated over $720,000 in professional time and over $50,000 in expenses for the benefit of the Class.[1] Without these efforts and the substantial financial investment by Plaintiff's counsel, the Class could not have hoped to have achieved the proposed result here. But despite the $720,000 in actual time spent, Lead Counsel seeks only the 1/3 fee it negotiated with Lead Plaintiff. This requested $500,000 (plus expenses) represents an actual loss of $220,000—*i.e.*, a nearly 30% haircut on the lodestar calculation—on the actual time spent by Plaintiff's counsel. That is eminently fair and certainly reasonable given the result.

## BACKGROUND

The allegations underlying the Complaint are detailed in the Miller Declaration ¶¶ 18–32. In summary, this class action was brought on behalf of shareholders who acquired Acura securities between February 21, 2006, and April 22, 2010 (the Class Period). The Complaint alleges that Defendants issued materially false and misleading statements and omissions regarding its leading drug candidate, Acurox. ¶¶ 44–95.[2] By misrepresenting Acurox's viability as an FDA product candidate, the Complaint alleges, Defendants obtained a lucrative third-party

---

[1] The procedural history and investigation are more fully described in the Miller Declaration.

[2] All "¶ __" references are to the Complaint unless otherwise noted.

license agreement, resulting in millions of dollars in milestone payments and large cash bonuses and salary increases for senior executives, including Defendants, as well as getting the Company listed on both the NASDAQ and the Russell 3000 Index. ¶¶ 25, 109–15, 117–18.

As alleged in the Complaint, however, it later came to light that the FDA would likely never approve Acurox. ¶¶ 8, 10, 44–98. As a result of the disclosure of this adverse information, the Complaint alleges, shares of Acura stock dropped 46% in four trading days. ¶ 26.

## ARGUMENT

### I.    The Court should award Lead Counsel a one-third percentage of the common fund in attorneys' fees.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.* v. *Van Gemert,* 444 U.S. 472, 478 (1980). "The court's authority to reimburse the representative parties for their attorney fees stems from the fact that the class action [device] is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 1803 (1986).

Typically, there are two ways to calculate fees in a common-fund case: the lodestar approach and the percentage-of-the-common-fund approach. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974–75 (7th Cir.1991). The Seventh Circuit prefers the latter, and that is what Lead Counsel seeks here.

### A.    A one-third fee represents what the private market would have generated ex ante had the Class negotiated the fee.

Under the percentage-of-the-common-fund method, the Seventh Circuit has stated that courts should attempt to "simulate the market . . . . Class counsel are entitled to the fee they

2

would have received had they handled a similar suit on a contingent fee basis with a similar outcome, for a paying client." *Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). In doing so, the Seventh Circuit has identified several factors to consider, including:

(1)      attorney's fee awards in other class actions, *Schulte v. Fifth Third Bank*, 09-CV-6655, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011) (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600–01 (7th Cir. 2005));

(2)      what other such litigants negotiate, *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001);

(3)      the risk of nonpayment a firm agrees to bear, *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007);

(4)      the quality of the attorneys' performance, *id.*, and

(5)      the amount of work necessary to resolve the litigation, *id.*

All of these factors support Lead Counsel's requested fee.

     **1.**      **A one-third contingent fee is a typical award in securities class-action litigation.**

Federal courts routinely award one-third of settlement funds in attorneys' fees to securities litigators.[3] Indeed, Lead Counsel received one-third fees in two very recent securities class actions.[4] Many courts have noted that awards of more than one-third are perfectly

---

[3] *See, e.g.*, *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (affirming 38% award); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (one-third award); *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086, at *2 (N.D. Ill. June 12, 2000) (one-third award "well within the generally accepted range"); *Taubenfeld*, 415 F.3d at 600 (30% award); *Burkholder v. City of Fort Wayne*, 2010 WL 4457310 at *5 (N.D. Ind. Nov. 1, 2010) (one-third award); *Kitson v. Bank of Edwardsville*, 2010 WL 331730 at *2 (S.D. Ill. Jan. 25, 2010) (one-third award); *McKinnie v. JP Morgan Chase Bank N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (30% award); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.1995) (33% award); *Ratner v. Bennett*, No. 92-4701, 1996 WL 243645 (E.D. Pa. May 8, 1996) (35% award in securities action); *Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (35% award); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 423-24 (S.D. Iowa 2001) (one-third award); *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1380–81 (D. Minn. 1985) (35% award).

[4] *See* Miller Decl. Ex. E, *In re Virgin Mobile USA IPO Litig.*, No. 07-5619-SDW, Order (D.N.J. Dec. 9, 2010); Miller Decl. Ex. F, *In re Opteum, Inc. Secs. Litig.*, No. 07-14278, Order (S.D. Fla. Dec. 14, 2010).

appropriate in the right circumstances. *See, e.g.*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991) ("[A]n upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded."); *Zinman v. Avemco Corp.*, No. 75-1254, 1978 WL 5686, at *1-2 (E.D. Pa. Jan. 18, 1978) (fee equal to 50% of recovery); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (fee not to exceed 40% of recovery); *Bello v. Integrated Resources, Inc.*, No. 88-1214, 1990 WL 200670, at *3 (S.D.N.Y. Dec. 4, 1990) (courts have "awarded fees in the 20%–50% range in class actions").

But at least in the Seventh Circuit, a one-third percentage fee is the benchmark for class action recoveries. *See, e.g*, *Schulte*, 2011 WL 3269340, at *31 ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33-1/3% of the settlement fund is within the reasonable range."); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33-1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Goldsmith v. Tech. Solutions Co.*, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("Thirty-three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients.").

Independent studies also prove that fees of one-third for settlement values less than $5 million are normal. For example, a recent study by NERA Economic Consulting ("NERA") found that the median attorneys' fees as a proportion of settlement value for settlements less than $5 million finalized from 1996 to 2011 was 33-1/3%. J. Milev, R. Patton, S. Starykh, and J. Montogmery, *Recent Trends in Securities Class Action Litigation: 2011 Year-End Review* (NERA, December 2011) at 22, fig. 26. An earlier NERA study also stated that "Plaintiffs' counsel typically receives one-third of any settlement or sum awarded at judgment as

compensation for their services." E. Buckberg, T. Foster, R. Miller, and S. Planrich, *Recent Trends in Shareholder Class Action Litigation: Bear Market Cases Bring Big Settlements* (NERA, February 2005) at 8, n. 12. Accordingly, a contingent fee award of one-third of the Settlement Fund is "within the reasonable range" and appropriate here.

**2.    A one-third fee represents the market rate for securities class-action litigation.**

The Seventh Circuit has stated that an appropriate attorneys' fee award is one that "re-creates" the market for the provided legal services. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[T]he measure of what is reasonable is what an attorney would receive from a paying client in a similar case."). In the private market, class action securities fraud cases are handled on a contingency fee basis. *See McKinnie*, 678 F. Supp. 2d at 815 ("The class members have little motivation to retain counsel on an hourly basis because they are not guaranteed to prevail on their claims and the individual damages suffered were nominal.").

In private litigation, "attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1341 (S.D. Fla. 2007) (citing *Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77-39, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial). These percentages are the prevailing market rates throughout the United States for contingent representation.

And the percentage method of awarding fees in class actions "is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. Individual

clients often recognize that they lack the expertise or time to monitor their attorneys' performance. Thus, they select a compensation formula—the contingent fee—that automatically aligns their attorneys' interest with their own. And in these cases, one-third of a recovery is a typically negotiated fee. *See Goldsmith*, 1995 WL 17009594, at *8 ("Thirty-three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients.").

The facts here bear out the market rate as well. Lead Plaintiff here did, in fact, negotiate a retainer agreement with Lead Counsel at the outset that provides for potential attorneys' fees of up to 33-1/3%. The Court may use this arm's-length fee agreement as a benchmark for determining the appropriate market rate here. *See Synthroid*, 264 F.3d at 718–19; *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) ("[C]ourts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable."). Furthermore, despite over 13,000 notices being mailed to the Class, not a single Plaintiff has objected to the requested one-third fee.

### 3. Lead Counsel bore the risk of nonpayment.

This litigation was undertaken by Lead Counsel on a wholly contingent basis. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient attorney resources were dedicated to the prosecution of the Litigation and that funds were available to compensate staff and to pay the considerable out-of-pocket costs which a case such as this entails. As detailed in the Miller Declaration, that risk of nonpayment was substantial. Miller Decl. ¶¶ 38–39. It involved over $700,000 in professional time and over

$50,000 in out-of-pocket expenses. *Id.* ¶¶ 51, 55.

### 4. Lead Counsel performed well in this case.

From the outset, Plaintiff's Counsel engaged in a concerted effort to obtain the maximum recovery for the Class. The efforts undertaken in this case were solely those of Lead Counsel and Local Counsel as opposed to the efforts of other groups, such as government agencies. Lead Counsel did not have the benefit of any governmental investigations through agencies that have broad and extensive subpoena power. In spite of this, Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA, they would develop the evidence to support a convincing case, having engaged outside investigators and conducted informal investigation through interviews with former Acura employees, experts on economic and damages issues, and electronic document production consultants.

The proof is in the pudding. Securities fraud cases typically settle for less than 10% of the estimated damages. *See, e.g.*, *Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (approving settlement providing 1.6% of potential recovery); *City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972) (settlement of 3.2% to 3.7% of potential recovery was "well within the ball park"). Here, Lead Counsel negotiated a settlement double the normal rate. This was despite limited insurance coverage, Defendants' inability to pay substantially more than the settlement amount, the early stage of the case, and the fierce opposition displayed by Defendants' counsel, Latham & Watkins LLP, a firm with a nationally recognized securities practice and reputation for vigorous advocacy of its clients' interests.

### 5. Lead Counsel performed all the work necessary to reach this settlement.

Lead Counsel filed the operative complaint in the litigation on March 14, 2011. That Complaint and the one preceding it required extensive research and investigation. On May 13, 2011, Defendants moved to dismiss the Complaint and Lead Plaintiff opposed the motion on July 12, 2011. On July 21, 2011, Lead Counsel and Defendants' Counsel met for mediation before retired United States District Judge, the Honorable Nicholas Politan at the offices of Latham & Watkins in New York City. After presentations and discussions and protracted arms-length negotiations facilitated by Judge Politan, the parties were unable to reach an agreement in principle to settle the litigation. Following the unsuccessful mediation, Defendants filed their reply memorandum in support of their motion to dismiss on August 11, 2011.

Defendants filed the Notice of Death of Andrew D. Reddick on May 13, 2011, and informal negotiations resumed during a meet and confer regarding a motion to substitute a party on or about July 28, 2011. Such negotiations ultimately led to an agreement in principle to settle this matter. Plaintiffs timely moved to substitute the Executrix of the Estate of Mr. Reddick as a defendant on August 4, 2011. After a formal hearing, the Court issued a minute entry granting the motion on August 15, 2011.

On September 29, 2011, counsel convened for a status conference and informed the Court that an agreement to settle this matter had been reached. Thereafter, a date for preliminary approval was ultimately set for November 8, 2011. At the November 8, 2011 hearing, the Court entered an Order preliminarily approving settlement and providing for notice of pendency and scheduled the final settlement fairness hearing for February 16, 2012.

**B.      A lodestar cross-check of the requested fee shows that it is very reasonable.**

Even courts that use a percentage-of-the-common-fund approach frequently compare the resulting fee to the attorney's lodestar. The lodestar method may provide a useful perspective on the reasonableness of a given percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Under the "lodestar method," the Court calculates attorneys' fees by multiplying the number of hours worked by a reasonable hourly rate and then applies a risk multiplier. *See Harman,* 945 F.2d at 974–75. Here, Lead Counsel and Local Counsel expended 1,449.65[5] hours in the prosecution of this action, which reflects Plaintiff's Counsels' commitment to the action. Miller Decl. ¶ 51; Heffner Decl. ¶ 3. Applying Plaintiff's Counsels' normal current hourly rates to the hours expended in this action yields a lodestar amount of $720,200.50.[6] *See* Miller Decl. ¶ 51.

Thus, the 33-1/3% fee requested by Lead Counsel actually constitutes a ***negative*** multiplier of 0.69, meaning that Counsels' fee request amounts to substantially *less* than their straight time, without any enhancement. In cases of this nature, fees representing multiples above the lodestar have often been awarded to reflect the contingency fee risk and other relevant factors. *See, e.g.*, *In re Blech Sec. Litig.*, 2000 U.S. Dist. LEXIS 6920, at *15 (S.D.N.Y. May 22, 2000) (court awarded fees equal to 30% of settlement, noting that lodestar analysis resulted in "negative" multiplier). Thus, the lodestar "cross check" here more than fully supports the

---

[5] Plaintiff's Counsel made every effort to work as efficiently as possible in this case. Miller Decl. ¶ 3. Furthermore, Lead Counsel sought and received competitive bids for the administration process to further decrease costs to the Class.

[6] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *NY State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

requested percentage fee, which represents a negative multiplier (multiplier of less than one), and would support a significantly higher fee award. *Id.*; *see also In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 341–42 (D.N.J. 2002) ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *In re Interpublic Sec. Litig.*, Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *12 (S.D.N.Y. Oct. 27, 2004) (awarding multiplier amounting to 3.96 and noting that multipliers between 3 and 4.5 have been common in securities class actions).

Lead Counsel invested substantial time and effort prosecuting this action to a successful completion for the Class. The modest requested fee, therefore, is reasonable, whether the fee is calculated as a percentage of the fund or calculated pursuant to the lodestar method.

## II.  Lead Counsel's expenses are fair and reasonable.

Lead Counsel's fee application includes reimbursement for expenses in an amount of $51,605.40, which were reasonably incurred and necessary to the prosecution of this Action.[7] Miller Decl. ¶ 59. These expenses included fees for expert/consultants and investigators involved in Lead Counsel's pre-suit investigation, as well as mediation expenses, computerized legal research fees, photocopies, and transportation. *Id.* These expenses are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to representation of class). To date, not a single objection to the expense request has been received. Reimbursement of these expenses is fair and reasonable.

---

[7] Lead Counsel made a concerted effort to keep expenses to a minimum in this action. For instance, the Westlaw research fees for this litigation, which are included in Lead Counsel's expenses, reflect only the real cost to the firm actually attributable to this litigation, with no market-rate mark-up.

**III.    To date, not one of the 14,102 identified Class members has objected to the requested fees or expenses.**

To date, the Claims Administrator has disseminated 14,102 copies of the Notice to Class Members informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees of 33-1/3% of the Gross Settlement Fund and no more than $52,000 in expenses. Miller Decl. ¶ 12; Affidavit of Paul Mulholland at 5. The time to object to the fee request expires on February 2, 2012, and as of this date, no member of the Class has requested exclusion from the Class or objected to the Settlement or any of its terms, the proposed Plan of Allocation, and/or the application by Lead Counsel for an award of fees and expenses.[8] Miller Decl. ¶ 12.

## CONCLUSION

Based on the foregoing and the entire record herein, Lead Counsel respectfully request that the Court award one-third of the Gross Settlement Fund as payment for attorneys' fees and reimbursement of expenses in an amount of $51,605.40 in connection with the prosecution of this action.

Dated: January 23, 2012          SUSMAN HEFFNER & HURST LLP

                                 By: /s/ Matthew T. Heffner
                                 Matthew T. Heffner
                                 20 South Clark Street, Suite 600
                                 Chicago, Illinois 60603
                                 Telephone: (312) 346-3466
                                 Facsimile: (312) 346-2829

                                 *Local Counsel for Lead Plaintiff and the Class*

---

[8] Lead Counsel will advise the Court of any objections to the fee or expense application received after the filing of this memorandum in its reply memorandum, due February 9, 2012.

KAHN SWICK & FOTI, LLC
Kim E. Miller (admitted *pro hac vice*)
500 5th Avenue, Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

-and-

Lewis S. Kahn
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Lead Counsel for Lead Plaintiff and the Class*